

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-16-00671-CR

Luis Alfredo **SERVIN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2015CR5175
Honorable Sid L. Harle, Judge Presiding

Opinion by:　Liza A. Rodriguez, Justice

Sitting:　　Rebeca C. Martinez, Justice
　　　　　Patricia O. Alvarez, Justice
　　　　　Liza A. Rodriguez, Justice

Delivered and Filed: April 24, 2019

AFFIRMED

Luis Alfredo Servin was convicted by a jury of two counts of aggravated robbery. On appeal, Servin contends the jury charge failed to link the appropriate *mens rea* to its respective conduct element resulting in egregious harm. We affirm the trial court's judgment.

### BACKGROUND

Servin was indicted for two counts of aggravated robbery. The two complainants were Robert "Bob" and Betty Gilland.

The Gillands, who were both over sixty-five years old, testified Betty woke Bob around 4:00 a.m. because she saw a bright light in the house. As Betty followed Bob down the hallway, they were confronted by two individuals. Bob testified one of the individuals was holding a bright light and a long gun to which the light was possibly taped. Bob testified he could only see the barrel of the gun because of the light. Betty saw the bright light but did not see the gun. Both testified they were ordered to lie down on the floor. Bob testified the individual said he would shoot them if they did not get down. On cross-examination, Bob admitted the statement he gave the lead detective did not refer to the individual saying he would shoot them, but Bob testified the individual made the statement. Bob was subsequently ordered to assist one of the individuals in locating the Gillands' guns which were in a rack under their bed. Both Bob and Betty detailed the items the individuals stole from their home.

Although Bob initially testified he did not did not believe he felt scared, he later stated he was in fear for Betty and that they were both in serious danger from the minute the individuals entered their home. Bob further testified, "Anybody that orders you in your own home, it's threatening." Betty testified she felt threatened and was afraid the individuals might cause her serious bodily injury.

The finger of a latex glove was recovered from the Gillands' home by the area where their television was removed from the wall. It was stipulated at trial that Servin's DNA was on the finger of the glove.

In his videotaped interview, Servin admitted breaking into the Gillands' home; however, he believed no one was home when he broke into the house because he knocked on the door and no one answered.

After hearing the evidence, the jury convicted Servin of both counts of aggravated robbery. Servin appeals.

**DISCUSSION**

In his brief, Servin contends the jury charge failed to link the appropriate *mens rea* to its respective conduct element which was erroneous and violated his due process rights and his right to a unanimous verdict. Acknowledging no objection was made to the charge, Servin asserts he was egregiously harmed by the charge error. The State concedes the jury charge was erroneous; however, the State asserts the record does not establish egregious harm.

A.      Standard of Review

"[W]e review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal." *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). Because Servin did not object to the charge error about which he complains on appeal, "reversal is required only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id*. "Egregious harm is a high and difficult standard to meet, and such a determination must be borne out by the trial record." *Id*. (internal quotation omitted). "In examining the record to determine whether charge error has resulted in egregious harm to a defendant, we consider (1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole." *Id*.

B.      Aggravated Robbery

As submitted in the jury charge, a person commits the offense of robbery if, in the course of committing theft, and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *See* TEX.

PENAL CODE ANN. § 29.02(a)(2). A person commits aggravated robbery if the person commits robbery and he: (1) uses or exhibits a deadly weapon; or (2) threatens or places a person 65 years of age or older in fear of imminent bodily injury or death. *See* § 29.03(a)(2), (3)(A).

C. Charge Error

"A 'conduct element' is basically that element of the offense that makes the defendant's conduct proscribable." *Fields v. State*, 966 S.W.2d 736, 739 (Tex. App.—San Antonio 1998), *rev'd on other grounds*, 1 S.W.3d 687 (Tex. Crim. App. 1999). "The Texas Penal Code identifies three 'conduct elements' that may be implicated in a given crime: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct." *Id.*; *see also Herrera v. State*, 527 S.W.3d 675, 678 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (same). In *Fields*, this court recognized that aggravated robbery by threat contains all three conduct elements, reasoning: "The State must prove that the defendant caused or placed another in fear of bodily injury (a result of his conduct) and that he unlawfully appropriated property (the nature of his conduct), and the robbery itself is committed in the course of the commission of a theft (circumstances surrounding the conduct)." 966 S.W.2d at 739. Subsequent cases, however, have recognized that the "threatens or places another in fear of bodily injury" element of the offense contains both a nature of the conduct element (threatens) and a result of the conduct element (places another in fear). *See Garfias v. State*, 424 S.W.3d 54, 60-61 (Tex. Crim. App. 2014); *Gutierrez v. State*, 446 S.W.3d 36, 40-41 & n.5 (Tex. App.—Waco 2014, pet. ref'd). Although *Fields* did not make this distinction, the distinction did not affect this court's analysis because we recognized all three conduct elements were implicated. 966 S.W.2d at 739. And, we recognized that when all three conduct elements are implicated, the charge must "limit the definitions in the jury charge to the conduct element or elements of the offense to which they apply." *Id.*; *see also Herrera*, 527 S.W.3d at 679 (noting charge must "instruct the jury as to which elements of the

charged offense each defined mental state, and each conduct element, applies"). In other words, the charge must link the element of the charged offense; i.e., "places another in fear," with the culpable mental state for that conduct element, i.e., a person acts intentionally with respect to the result of his conduct when it is his conscious objective or desire to cause the result, and a person acts knowingly with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

In this case, the abstract portion of the jury charge properly included the definitions for the mental states of intentionally and knowingly. However, because the charge failed to instruct the jury as to which mental states and conduct elements applied to each element of the offense, error existed in the charge.

### D.    Egregious Harm

Servin contends the "threaten" and "place in fear" elements of the offense were hotly contested by the defense. We disagree with his reading of the record. Although defense counsel challenged Bob's credibility regarding whether the individual stated he would shoot them if they did not get down, Bob testified the individuals' presence in his home at 4:00 a.m. was threatening and he was in fear of bodily injury. Betty also testified she felt threatened and was in fear of bodily injury. Finally, the lead detective testified a threat does not have to be verbal.

With regard to the entirety of the jury charge, "the facts, as applied to the law, in the application paragraphs pointed the jury to the appropriate portion of the definitions." *Patrick v. State*, 906 S.W.3d 481, 493 (Tex. Crim. App. 1995). For example, the application paragraph applying the law of aggravated robbery of a person 65 years of age or older to the offense against Bob asked the jury to determine if Servin did "intentionally or knowingly threaten or place Robert Gilland, a person 65 years of age or older[,] in fear of imminent bodily injury or death." Referring back to the definitions of the culpable mental states and applying them to the facts, it would be

fairly obvious to a jury that "threaten" relates to the nature of Servin's conduct, while "places in fear" relates to the result of Servin's conduct.

In his closing argument, defense counsel relied on Servin's statement during his interview that he believed no one was home to assert Servin only intended to commit the offense of burglary. Defense counsel stated, "the intent was to commit a burglary of an empty house and it turned unintentionally into something else." However, defense counsel then conceded the detective's testimony supported a conviction for robbery, stating, "I think at worst you could say robbery, possibly, because that's what the detective was saying, that's what she was saying." As the State noted in its final closing argument, if the jury believed Servin was guilty of robbery, he necessarily was guilty of aggravated robbery because it was undisputed that the Gillands were over the age of 65.

Although Servin's brief quotes portions of the State's closing argument where the State references mental states, the State was responding to defense counsel's focus at trial on Servin's statement that he did not believe anyone was home by arguing Servin's actions when confronting the Gillands were intentional and knowing. For example, the State argued, "Maybe they didn't expect Betty and Bob to come out of the doorway, but when they did, his behavior is what you're looking at. Okay? He didn't turn and run away, he didn't go Whuh-Oh, he confronted them, put a gun in Bob's face and said get on the ground. Those actions are intentional, those actions are knowing. And that is what makes it a robbery."

We conclude the mental states and conduct elements applicable to each element of the offense was not the focus at trial or during closing argument. Accordingly, the charge error was not egregiously harmful because it did not "affect[] the very basis of the case, deprive[] [Servin] of a valuable right, or vitally affect[] a defensive theory." *Villarreal*, 453 S.W.3d at 433*; see also Herrera*, 527 S.W.3d at 679-80 (holding no egregious harm shown when "[t]he issue of appellant's

mental state was not at all a focus of the trial or the closing arguments"); *Fields*, 966 S.W.2d at 740 (holding no egregious error when contested issues at trial did not include mental states or to which conduct element they applied).

## CONCLUSION

The trial court's judgment is affirmed.

Liza A. Rodriguez, Justice

PUBLISH