ACCEPTED
01-15-00302-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/6/2015 9:54:06 PM
CHRISTOPHER PRINE
CLERK

**No. 01-15-00302-CR**

In the
Court of Appeals
For the
First District of Texas
At Houston

———————◆———————

**Cause No. 74447**
In the 412th Judicial District Court
Of Brazoria County, Texas

———————◆———————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

11/6/2015 9:54:06 PM

CHRISTOPHER A. PRINE
Clerk

**JASON BURROWS**
*Appellant*

V.

**THE STATE OF TEXAS**
*Appellee*

———————◆———————

APPELLANT'S BRIEF

———————◆———————

**SCOT R. COURTNEY**
TBC No. 00790515
P.O. Box 787
San Marcos, Texas 78667-0787
Tel.:        512-392-9292
Fax No.:   512-532-6766
EM: sanmarcoslaw@gmail.com
*Counsel for Appellant*

ORAL ARGUMENT REQUESTED

# IDENTIFICATION OF ALL PARTIES

APPELLANT:

JASON BURROWS
2902 Kensington Park
Pearland, Texas 77584

TRIAL PROSECUTOR:

CHASE CLAYTON-LEAD
TBC No. 24072040
AARON PERRY
TBC No. 24068270
Assistant District Attorney
111 E. Locust St., Suite 408A
Angleton, Texas 77515
Tel.:          979-864-1230

DEFENSE COUNSEL AT TRIAL:

GREG CAGLE-LEAD
TBC No. 00790414
1602B State St.
Houston, Texas 77007
Tel.:          800-848-2088

SCOT COURTNEY
TBC No. 00790515
P.O. Box 787
San Marcos, Texas 78667-0787
Tel.:          512-392-9292
Fax No.:   512-532-6766
E: sanmarcoslaw@gmail.com

PRESIDING JUDGE AT TRIAL:

HON. W. EDWIN DENMAN

APPELLANT'S COUNSEL:

SCOT COURTNEY
TBC No. 00790515
P.O. Box 787
San Marcos, Texas 78667-0787
Tel.:          512-392-9292
Fax No.:   512-532-6766
EM:sanmarcoslaw@gmail.com

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES......................................................... i

TABLE OF CONTENTS ................................................................. ii

INDEX OF AUTHORITIES ............................................................iii

STATEMENT OF JURISDICTION ...................................................... v

ISSUES PRESENTED .................................................................. vi

STATEMENT OF FACTS..............................................................vii

SUMMARY OF THE ARGUMENT...................................................... ix

ARGUMENT AND AUTHORITY
     POINT OF ERROR NO. ONE..................................................... 1
     POINT OF ERROR NO. TWO..................................................... 9

PRAYER ............................................................................ 16

CERTIFICATE OF SERVICE.......................................................... 17

CERTIFICATE OF COMPLIANCE ................................................... 17

# INDEX OF AUTHORITIES

**CASE**                                                     **PAGE**

*Abdnor v. State*, 871 S.W.2d 726 (Tex.Crim.App.1994) ..................... 7

*Almaguer v. State*, 2014 WL 5088386 (Tex. App. Oct. 9, 2014). 12, 15

*Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984) ................... 7

*Arthur v. State*, 11 S.W.3d 386 (Tex. App. 2000).............................. 10

*Brooks v. State*, 132 S.W.3d 702 (Tex.App.-Dallas 2004, pet. ref'd). 14

*Burch v. State*, 401 S.W.3d 634 (Tex.Crim.App. 2013)..................... 11

*Crawford v. Washington*, 541 U.S. 36, (2004)............. 9, 11, 12, 13, 16

*Carriere v. State*, 84 S.W.3d 753
(Tex.App.-Houston [1st Dist.] 2002) ................................................. 4,5

*Davis v. State*, 968 S.W.2d 368 (Tex.Crim.App. 1998)..................... 10

*De La Paz v. State*, 273 S.W.3d 671 (Tex.Crim.App.2008) .............. 12

*Davis v. Washington*, 547 U.S. 813 (2006) .................................. 10, 12

*Fields v. State*, 1 S.W.3d 687 (Tex.Crim.App.1999) ................... 10, 11

*Fluellen v. State*, 104 S.W.3d 152
(Tex.App.-Texarkana 2003, no pet.) ................................................... 5

*Geesa*, 820 S.W.2d 154 (Tex.Crim.App. 1991) ............................. 2, 3

*Gutierrez v. State*, 150 S.W.3d 827
(Tex.App.-Houston [14th Dist.] 2004, no pet.) ................................. 14

*Hanks v. State*, 104 S.W.3d 695
(Tex.App.-El Paso 2003, pet. granted) ............................................... 5

*Hereford v. State*, 444 S.W.3d 346 (Tex. App. 2014)....................... 12

*Langham v. State*, 305 S.W.3d 568 (Tex.Crim.App.2010) .......... 13, 16

*Lee v. State*, 143 S.W.3d 565 (Tex.App.-Dallas 2004, pet. ref'd) ...... 14

*Marquez v. State*, 725 S.W.2d 217 (Tex.Crim.App.1987) .................. 2

*Mays v. State*, 318 S.W.3d 368 (Tex. Crim. App. 2010)..................... 4

*McGinty v. State*, 723 S.W.2d 719 (Tex.Crim.App.1986) ................... 2

*Minor v. State*, 91 S.W.3d 824
(Tex.App.-Fort Worth 2002, pet. ref'd) ............................................... 5

*Mitchell v. State*, 931 S.W.2d 950 (Tex.Crim.App. 1996) ................. 11

*Molina v. State*, 450 S.W.3d 540 (Tex. App. 2014)........................... 11

*O'Canas v. State*, 140 S.W.3d 695 (Tex. App.-Dallas 2003) ............. 5

*Ochoa v. State*, 119 S.W.3d 825
(Tex.App.-San Antonio 2003, no pet.) ................................................ 5

*Paez v. State*, 995 S.W.2d 163
(Tex.App.—San Antonio 1999, pet. ref'd) .......................................... 9

*Paulson v. State*, 28 S.W.3d 570 (Tex.Crim.App.2000) .......... 2, 3, 4, 5

*Phillips v. State*, 72 S.W.3d 719
(Tex.App.-Waco 2002, no pet.)........................................................... 5

*Reyes v. State*, 938 S.W.2d 718 (Tex.Crim.App.1996) ................... 2, 3
*Rodriguez v. State*, 96 S.W.3d 398 (Tex. App.-Austin 2002) ...... 2, 5, 6
*Saunders v. State*, 817 S.W.2d 688 (Tex.Crim.App.1991) ................. 7
*Scott v. State*, 165 S.W.3d 27 (Tex.App.-Austin 2005, pet. stricken) 14
*Torres v. State*, 116 S.W.3d 208 (Tex.App.-El Paso 2003, no pet.)..... 5
*Tyler v. State*, 167 S.W.3d 550
(Tex. App.-Houston [14th Dist.] 2005) ............................................... 14
*United States v. Langer*, 962 F.2d 592 (7th Cir.1992) ......................... 6
*United States v. Saget*, 377 F.3d 223, 228 (2nd Cir.2004) ................. 14
*Vosberg v. State*, 80 S.W.3d 320
(Tex.App.-Fort Worth 2002, pet. ref'd) .............................................. 5
*Walker v. State*, 180 S.W.3d 829
(Tex. App.-Houston [14th Dist.] 2005) ............................................... 15
*Wall v. State*, 184 S.W.3d 730 (Tex.Crim.App.2006)........................ 12
*Whitson v. State*, 495 S.W.2d 944, 946 (Tex.Crim.App.1973) ............ 6
*Wiggins v. State*, 152 S.W.3d 656
(Tex.App.-Texarkana 2004, pet. ref'd) ............................................... 14

**STATUTES, CODES & RULES**                                    **PAGE**
Tex.Code Crim. Proc. 37.07 §3(a) ...................................................... 10
T.R.A.P. 9.4(i)(2) ............................................................................... 17
T.R.A.P. 44.2 ....................................................................................... 15
T.R.A.P. 44.2(a) .................................................................................. 17
Tex.R. Evid. 801(d) ............................................................................ 12
U.S. Const. Amend. VI........................................................................ 11

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF JURISDICTION

Appellant was charged by indictment alleging the Class A Misdemeanor of Official Oppression, alleged to have occurred on June 10, 2012 in Brazoria County, Texas. After a trial on the merits, a jury returned a verdict of guilty on the charge of Official Oppression. The Court sentenced Appellant to three hundred sixty-five days (365) in the Brazoria County Jail and a Two Thousand Dollar ($2,000.00) fine on March 27, 2015. Appellant's request for bond pending appeal was granted and Appellant released upon satisfaction of said bond. Timely Notice of Appeal was filed and this matter properly transferred to this Court for appellate review.

## ISSUES PRESENTED

### POINT OF ERROR NO. ONE
**THE TRIAL COURT ERRED IN INSTRUCTING THE JURY "I**T IS **NOT REQUIRED THAT THE PROSECUTION PROVE GUILT BEYOND ALL POSSIBLE DOUBT."**

### POINT OF ERROR NO. TWO
**THE TRIAL COURT ERRED IN ALLOWING AND CONSIDERING EVIDENCE OF EXTRANEOUS CONDUCT BASED ON HEARSAY AND IN VIOLATION OF DEFENDANT'S DUE PROCESS RIGHTS AS RECOGNIZED UNDER *CRAWFORD*.**

# STATEMENT OF FACTS

On June 10, 2012, Mariana Martinez alleged that at approximately 4:30a.m., while traveling to her workplace located at 1608 Hwy. 6, Alvin, Texas, a marked patrol unit was behind her as she traveled down CR 99. Sometime after she swerved in the roadway to avoid a dog, the marked patrol unit activated the patrol/emergency equipment. In response, she pulled over and a white male officer approached her, requested identification and advised her of the reason for the stop (*i.e.* swerving). Ms. Martinez advised she did not have a driver's license and was asked to step out of the car. After a brief interview, the Officer advised Ms. Martinez to get back in her car and rive to the Spin-In Market, located at 2246 CR 99, in Alvin, Texas, approximately 1½ miles from the initial stop location.

Ms. Martinez testified that she parked at the end of the building and the patrol unit parked directly behind her. The Officer approached the car and then told her to get out of the car; she complied and walked to back of her car. She testified that the Officer asked her questions. The Officer told her to turn around and began a search of her from the waist up and then told her to turn around and to told her to go to the back of the store where it was dark. She complied. At that point, the Officer ordered her to lift her shirt;

she complied. Ms. Martinez testified that at that point, the Officer fondled her breasts. The Officer then stopped and allowed her to leave.

Ms. Martinez reported this incident on June 11, 2012 and on June 29, 2012 she identified Defendant from a photo line-up (*See* State's Ex. No. 8 [RR Vol. 8]).

Testimony revealed that no evidence of the stop was contained on the patrol unit assigned to him on the above-referenced date. Furthermore, all digital evidence, including the computer data logs from the patrol unit assigned to the Defendant had been destroyed by the investigating officer(s). No video evidence captured the events alleged. The computer hard-drive containing the digital evidence relating to the in-car video system reflected that there was no download of the evidence to the main system and was also apparently destroyed by investigating agents. Both the vehicle assigned to Defendant at the time of the allegation, as well as the in-car digital recording system from the time of the allegation was disposed of by the Brazoria County Sheriff and was never made available to the defense for inspection and/or examination.

During the Punishment phase, testimony was heard (over objection) that Appellant had been identified via photo spread, during the investigation of an unrelated allegation. This testimony was from an investigating officer

and no other witness was called to testify relating to this allegation. The alleged complainant was not called to testify, however was subpoenaed by the State, but failed to appear.

## **SUMMARY OF THE ARGUMENT**

A brief summary of the argument contained in Appellant's Brief includes: 1) Trial Court's erred in allowing an instruction relating to the definition of reasonable Doubt; and 2) Trial court erred in admitting and considering evidence over objections based on Hearsay, Foundation and *Crawford*.

## ARGUMENT & AUTHORITY

### POINT OF ERROR NO. ONE
**THE TRIAL COURT ERRED IN INSTRUCTING THE JURY "IT IS NOT REQUIRED THAT THE PROSECUTION PROVE GUILT BEYOND ALL POSSIBLE DOUBT."**

Upon review of the proposed Jury Instructions, Defense Objected to the inclusion of a definition of "reasonable doubt" that was included, at the behest and request of the State in those instructions. The following is an excerpt of that portion of the hearing/charge conference:

> We have one objection. That objection is to the language included on page 3, second full paragraph, second sentence. That reads, "**It is not required that the prosecution prove guilt beyond all possible doubt.**" We'd ask that that be stricken. It's our position that the caselaw out of the 3rd District as well as the 14th and cited cases -- I believe it's Rodriguez. I can't recall the cite, the cite that we gave the Court yesterday we discussed. And Progeny is error. It's our position that the caselaw suggests that it is prudent -- well, absent an agreement by the parties that it is an error and prudent practice not to be included over objection.
> THE COURT: I'll overrule that objection.

(*See* RR VI, pg. 4-5)

It should be noted that the Pattern Jury Charges promulgated by the State Bar of Texas do not contain, nor advocate for the inclusion of such a definition.

SC                                                          1

Secondly, it is most significant that the Second Jury note sent out during deliberations read "We want a definition of reasonable doubt that is not influenced by the State or defense." (*See* CR Vol. I, pg. 175)

Prior to the 1991 decision in *Geesa* and for well over a century, Texas trial courts normally did not define "reasonable doubt" in jury charges. *See Rodriguez, supra, citing, McGinty v. State*, 723 S.W.2d 719, 721 (Tex.Crim.App.1986). Additionally, a trial court's refusal to define such, even when requested, was frequently held not to be error. *See Rodriguez, supra, citing, Marquez v. State*, 725 S.W.2d 217, 241 (Tex.Crim.App.1987). As the Court is also aware, On November 6, 1991, the Court of Criminal Appeals in *Geesa* adopted a definition of proof beyond a reasonable doubt and required that it be given "in all criminal cases, even in the absence of an objection or request by the State or the defendant, whether the evidence be circumstantial or direct." *Geesa*, 820 S.W.2d at 162. In *Reyes v. State*, 938 S.W.2d 718, 720–21 (Tex.Crim.App.1996), the Court held that the above described holding in *Geesa* created an "absolute systemic requirement" that cannot be waived or forfeited or be subject to a harm analysis in a case where the *Geesa* definition was totally omitted.

Then came *Paulson*. In reviewing the trial court's complete omission of the *Geesa* definition, the Fourteenth Court of Appeals, on the basis of

*Geesa* and *Reyes* dutifully, but reluctantly found "automatic reversible error." *Paulson v. State*, 991 S.W.2d 907, 917 (Tex.App.-Houston [14th Dist.] 1999), rev'd, 28 S.W.3d 570 (Tex.Crim.App.2000). PDR was granted in *Paulson* and the Court of Criminal Appeals overruled *Reyes* in its entirety and overruled *Geesa*, insofar as that decision required trial courts to instruct juries on the mandated definition of "reasonable doubt." *Paulson*, 28 S.W.3d at 573.

"It is ill-advised for us to require trial courts to provide the jury with a redundant, confusing, and logically-flawed definition when the Constitution does not require it, no Texas statute mandates it, and over a hundred years of pre-*Geesa* precedent discourages it." *Id.* at 572–73. The Paulson opinion further added: "We find that the better practice is to give no definition of reasonable doubt at all to the jury. On the other hand, if both the State and the defense were to agree to give the *Geesa* instruction to the jury, it would not constitute reversible error for the trial court to acquiesce to their agreement. *Id.* at 573.

*Paulson* returned Texas law to its pre-*Geesa* condition - "it is not error to refuse to define reasonable doubt." 43 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 36.34 (2d ed. Supp.2002).

In the fallout from *Paulson*, came a series of decisions that currently leaves this particular state of affairs unsettled and unsettling. Notwithstanding the following review of the various Courts and their respective views, all Court's, based upon the dictate of the Texas Court of Criminal Appeals must agree that "the better practice is to give no definition of reasonable doubt at all to the jury". *See, Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010) & *Paulson v. State*, 28 S.W.3d 570, 573 (Tex.Crim.App.2000).

Granted, early on this Court weighed-in with it's decision in *Carriere v. State*, 84 S.W.3d 753, 759 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd), which held that the language at issue did not constitute a definition of reasonable doubt and therefore did not violate *Paulson*. This Court however, tempered such with the following, "[t]he *Paulson* court held the "better practice" was to avoid defining reasonable doubt for the jury. *Id*. "Better practice" does not preclude a court from submitting a proper charge in a different fashion. If including any instruction or definition regarding reasonable doubt would constitute error, the *Paulson* court was in a position to say so and, instead, it remained silent to that effect. We must review each charge, and each objection therein, on a case-by-case basis, to determine if error exists. *Id.* at 760.

Since that time, other courts of appeals (Fort Worth, San Antonio, Texarkana, El Paso and Dallas), have agreed with *Carriere's* determination that language similar to the language at issue presently, does not define reasonable doubt.[1]

The Waco Court was also early to review such language in *Phillips v. State*, 72 S.W.3d 719 (Tex.App.-Waco 2002, no pet.) and found that "[b]ecause the Court of Criminal Appeals was clear on the point—give it all if the parties agree or give none of it—we hold that it was error to give part of the *Geesa* instruction in the absence of an agreement." The *Phillips* court determined, as did the Austin Court in *Rodriguez, supra*, that the error was harmless, however the Austin Court did not fully agree with the Waco Court of Appeals' strict *Paulson* construction in *Phillips*. The Austin Court's rational was that: "attempts to define reasonable doubt do not usually make it clearer in the minds of the jurors, often they tend to impermissively increase or lessen the burden of proof or utilize additional terms which themselves require definition." *See Rodriguez, supra, citing, Paulson*, at 912. The Austin Court went on to opine that "[i]t has been said that 'any use of an instruction defining reasonable doubt presents a situation

---

[1] *See Ochoa v. State*, 119 S.W.3d 825, 829 (Tex.App.-San Antonio 2003, no pet.); *Torres*

equivalent to playing with fire.'" *Id.* (*quoting United States v. Langer*, 962 F.2d 592, 600 (7th Cir.1992)).

The Austin Court's *Rodriguez* decision clearly recognizes that the criminal defendant in Texas is entitled to a jury charge on proof of guilt beyond a reasonable doubt, however keenly observed that "[t]he charge on reasonable doubt should be given in the language of the statute; attempts to amplify it, explain it or belittle it almost invariably lead to a reversal**."** *Rodriguez v. State*, 96 S.W.3d 398 (Tex. App.-Austin 2002), *quoting*, 1 A.R. Stout, Branch's Anno. Penal Code § 16 (2d ed.1956) (citations omitted); *see also Whitson v. State*, 495 S.W.2d 944, 946 (Tex.Crim.App.1973).

Such has left open to interpretation, the application of a harmless error analysis to remedy such instructions that are included over the "better practice" philosophy. Both the Waco and Austin Courts recognized this and others have followed suit.

Each Court seemingly and in some way, acknowledges that "[e]rror in a jury charge, if timely objected to in the trial court, requires reversal if the error resulted in some harm, *i.e.*, if the error was calculated to injure the defendant's rights." *See Abdnor v. State*, 871 S.W.2d 726, 731–32

(Tex.Crim.App.1994) & *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g).

Clearly, the actual degree of harm "must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Saunders v. State*, 817 S.W.2d 688, 690 (Tex.Crim.App.1991) (*quoting Almanza*, 686 S.W.2d at 171). Appellant has the burden to show that he suffered some actual harm from the charge error, and if he fails in this endeavor, the error will not require reversal. *Abdnor*, 871 S.W.2d at 732.

It cannot be argued that intentionally following a charging practice that is not the best practice can foster proper adherence to a suitable standard of due process. The case at hand illustrates exactly the problem with the inclusion of the language, over express and pointed objection and further illustrates the harm inherent in its inclusion.

The jury question is the best evidence to demonstrate the extreme impact such language can manifest. So much so, that the Jury was compelled to request further instruction and/or definition of the term "reasonable doubt" from the Court during deliberations. Clearly, the language relating to that term had been discussed at length and questions

remained in the minds of the jurors. It clearly had an effect on them in some way and certainly some harm from the inclusion of this language contributed to the conviction. The present case illustrates the manifestation of the harm, as well as illustrates how such harm is created when the best practices are not adhered to.

In light of the precept that exclusion of such language is the better practice, objections to it's inclusion, a harm analysis and the exacerbation of the jury note evidencing their confusion and focus on that particular standard, all specifically evidence a ruling that adversely affected Appellant's rights to due process to the degree that reversal is warranted.

**THE TRIAL COURT ERRED IN ALLOWING AND CONSIDERING EVIDENCE OF EXTRANEOUS CONDUCT BASED ON HEARSAY AND IN VIOLATION OF DEFENDANT'S DUE PROCESS RIGHTS AS RECOGNIZED UNDER *CRAWFORD*.**

During the punishment phase of the trial, the State called Francine Varga, an investigator with Brazoria County Sheriff's Department to detail her investigation into a reported allegation in which Appellant was identified as the alleged perpetrator. (*See* RR Vol 7, pp. 22-41). The origin of the investigation was a complaint made via telephone by Stepahnie Harold complaint sometime in February of 2012. This witnesses' investigation was a follow-up to that initial complaint and began in July 2012, five (5) months after the initial complaint.

Over objections based specifically on hearsay, foundation and *Crawford*, the Court allowed the State to elicit testimony from Investigator Vargas regarding the hearsay statements made to the Investigator by the alleged complainant (Stephanie Harrold), as well as statements made during the out-of-court identification procedure in which she purported to identify Appellant and included the photo array lineup identification (See RR Vol. 7, pp. 13-38 & State's Ex. 20). Ms. Harold was subpoenaed by the State, however did not appear.

SC                                                      9

In 1993, the Texas Legislature amended article 37.07 § 3(a) to allow at the punishment phase of a trial, evidence of unadjudicated offenses, however only if the State proved beyond a reasonable doubt that the offense occurred and that the defendant committed the offense. *See, Arthur v. State*, 11 S.W.3d 386, 392 (Tex. App. 2000); *see also*, Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 5.05, 1993 Tex. Gen. Laws 3586, (current version at Tex.Code Crim. Proc. Art. 37.07 § 3(a)); *see also Paez v. State*, 995 S.W.2d 163, 167 (Tex.App.—San Antonio 1999, pet. ref'd). Presently, the State may offer evidence of any extraneous crime or bad act that is shown, beyond a reasonable doubt, either to have been (1) an act committed by the defendant or (2) an act for which he could be held criminally responsible. *See Fields v. State*, 1 S.W.3d 687, 688 (Tex.Crim.App.1999); *see also* Tex.Code Crim. Proc. Art. 37.07 § 3(a). "Prior crimes or bad acts are introduced to provide additional information which the jury may consider in determining what sentence the defendant should receive." *See Arthur, supra, quoting, Fields*, *supra* at 688; *Davis v. State*, 968 S.W.2d 368, 373 (Tex.Crim.App. 1998).

This is permissible only after the trial judge has made a threshold determination that evidence regarding an extraneous crime is relevant and that such evidence may not be considered in assessing punishment until the

fact-finder is satisfied beyond a reasonable doubt that these prior acts are attributable to the defendant. *See, Fields, supra* at 688; & *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex.Crim.App. 1996). Once the threshold is met, the fact-finder may use the evidence however it chooses in assessing punishment. *See Fields, supra* at 688.

Such is not unfettered and without limitation. This restriction is found in the Confrontation Clause, which affords a criminal defendant the right to confront the witnesses against him. *See* U.S. Const. Amend. VI; *see also, Molina v. State*, 450 S.W.3d 540, 549-50 (Tex. App. 2014) & *Burch v. State*, 401 S.W.3d 634, 636 (Tex.Crim.App. 2013). One such limitation restricts the use of "testimonial evidence" unless (1) the witness appears at trial and is cross-examined or (2) the witness is unavailable and the defense had an opportunity to cross-examine. *Molina, supra* at 550, *citing Burch, supra* at 636. "[T]estimonial statements are those 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Id.* (*quoting Crawford v. Washington*, 541 U.S. 36, 52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)).

In order to properly evaluate Appellant's complained of error, the first inquiry must be whether the statements are testimonial hearsay. In order to

do so, one must look upon the objective purpose of the interview or interrogation. *See, Almaguer v. State*, No. 13-12-00605-CR, 2014 WL 5088386, at \*15 (Tex. App. Oct. 9, 2014), *petition for discretionary review refused* (Mar. 18, 2015) *citing, De La Paz*, 273 S.W.3d at 680 (*citing Davis*, 547 U.S. at 822–23, 126 S.Ct. 2266).

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *See* Tex.R. Evid. 801(d). "Generally speaking, a hearsay statement is 'testimonial' when the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* (*citing Davis*, 547 U.S. at 822–23, 126 S.Ct. 2266). Clearly, such is the case at hand. All statements attributable to the out-of-court declarant are made to an investigator who is conducting interviews that could ultimately be used to attempt to prosecute the Defendant and for which he was indicted.

While the U.S. Supreme Court, declined to provide a comprehensive definition of the term in *Crawford*, guidance was given us in the form of examples of what falls within the category. *See Wall v. State*, 184 S.W.3d 730, 734 (Tex.Crim.App.2006), *Hereford v. State*, 444 S.W.3d 346, 350

(Tex. App. 2014) & *Langham v. State*, 305 S.W.3d at 576. These examples include: 1) ex parte in-court testimony or the functional equivalent, such as affidavits, custodial examinations, or prior testimony, 2) pretrial statements that a declarant would expect to be used in a prosecution, 3) extrajudicial statements in formalized materials such as affidavits, depositions, prior testimony, or confessions, and 4) statements made under circumstances that would lead an objective witness to believe it would be used in a future judicial proceeding.

The *Crawford* Court also specified that the term "testimonial" includes statements taken by police officers during interrogations and noted that it was using the term "interrogation" in a colloquial rather than a technical legal sense. *Id*. at 52, 53 n. 4, 68, 124 S.Ct. 1354. To illustrate this point, the Court asserted that the declarant's recorded statement, "knowingly given in response to structured police questioning," qualified as testimonial under any conceivable definition of "interrogation." *Id.* at 53 n. 4, 124 S.Ct. 1354.

Texas courts generally have looked to the degree of formality of a declarant's interaction with police, the purpose and structure of police questioning, and the likelihood that the declarant expects that the statements could be used in a criminal prosecution and further delineates that

testimonial statements "involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings," and that the procedure used to procure the statement determines whether the statement is testimonial. *Tyler*, 167 S.W.3d at 553 (*citing Scott v. State*, 165 S.W.3d 27, 46 (Tex.App.-Austin 2005, pet. stricken)); *Wiggins v. State*, 152 S.W.3d 656, 659 (Tex.App.-Texarkana 2004, pet. ref'd) (*citing United States v. Saget*, 377 F.3d 223, 228 (2nd Cir.2004)[2].

The case at hand presents an investigator who is investigating allegations of improper and/or illegal conduct of a police officer, made by a citizen (Harold). The investigator contacted Harold, questioned her about the report in an on-going investigation and presented her with a photo array requesting that she identify the person that is the perpetrator. These facts demonstrate that the setting was sufficiently formal and structured to qualify as a police interrogation and the complaining citizen reasonably could have

---

[2] *Gutierrez v. State*, 150 S.W.3d 827, 830 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (holding that accomplice's videotaped statement to police after defendant's arrest was testimonial); *Lee v. State*, 143 S.W.3d 565, 570–71 (Tex.App.-Dallas 2004, pet. ref'd) (holding that statement was testimonial because circumstances were sufficiently formal when declarant made the statement during a traffic stop in response to police questioning and the statement was videotaped); *Brooks v. State*, 132 S.W.3d 702, 707 (Tex.App.-Dallas 2004, pet. ref'd) (holding that co-defendant's written custodial statement made during investigation of charged offense was testimonial).

believed that her identifications would be used in a subsequent trial of Appellant. Lastly, the issue regarding the testimonial nature of a photo array identification is settled as trstimonial.[3]

A vast majority of the testimony given by the Investigator falls squarely into one of the categories above and are therefore inadmissible. The question relating to the admission of the out of court identification in the photo array, which is also testimonial,[4] further exacerbates the error. Therefore, the admission of the vast majority of the incriminating out-of-court testimonial statements violated appellant's Sixth Amendment rights, which is constitutional error.

When the record in a criminal case, such as this reveals constitutional error, reversal of a judgment of conviction or punishment is required unless a determination beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See Almaguer v. State*, No. 13-12-00605-CR, 2014 WL 5088386, at *16 (Tex. App. Oct. 9, 2014), petition for discretionary review refused (Mar. 18, 2015) & Tex.R.App. P. 44.2(a).

The Court of Criminal Appeals has identified several relevant factors for appellate courts to examine when determining whether constitutional

---

[3] *Walker v. State*, 180 S.W.3d 829, 833-34 (Tex. App.-Houston [14th Dist.] 2005)
[4] *Id.*

error under Crawford may be declared harmless beyond a reasonable doubt, namely: 1) how important was the out-of-court statement to the State's case; 2) whether the out-of-court statement was cumulative of other evidence; 3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and 4) the overall strength of the prosecution's case. *Id., citing, Langham v. State*, 305 S.W.3d 568, 582 (Tex.Crim.App.2010).

This case presents the Court with a situation where the State supported the allegation by calling one (1) witness, therefore these statements were: 1) essential; 2) in no way cumulative of the evidence presented earlier in the trial; and 3) there was no corroboration of the out-of-court statement(s) on material points.

An application of the law to the record mandates reversal and remand for a new punishment hearing and sentencing.

## **PRAYER**

In accordance with T.R.A.P. 44.2, Appellant respectfully prays this Court grant the relief entitled to Appellant and remand this matter for further and appropriate proceedings consistent with this Court's opinion.

Respectfully submitted,

Scot Courtney
Attorney for Appellant
P.O. Box 787
San Marcos, Texas 78667-0787
512-392-9292
512-532-6766 FAX
E-Mail: sanmarcoslaw@gmail.com
State Bar #00790515

CERTIFICATE OF SERVICE

By affixing his signature to the foregoing instrument, Scot Courtney certifies that a true and correct copy of the same has been delivered to the office of the Harris County District Attorney, on this the 6th day of November, 2015.

Scot Courtney

CERTIFICATE OF COMPLIANCE

By affixing his signature to the foregoing instrument, Scot Courtney certifies that the foregoing Brief complies with T.R.A.P. 9.4(i)(2) and contains 3,219 words, as reflected by the word count of the computer program used to prepare the document.

Scot Courtney